UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**DARREN LAMONT KEYS**,

        Plaintiff,

v.

**DEPARTMENT OF HOMELAND SECURITY**,

        Defendant.

Civil Action No. 07-465 (AK)

**MEMORANDUM OPINION**[1]

Pending before the Court are Defendant's Motion for Summary Judgment [16], Defendant's Motion to Dismiss the Complaint [17], Plaintiff's Motion in Opposition to Defendant's Motion to Dismiss or for Summary Disposition [18], and Defendant's Reply [19]. Defendant moves the Court, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Plaintiff's claim as moot. In the alternative, Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

I.    **Background**

This case arises from a Freedom of Information Act request that *pro se* Plaintiff Darren Lamont Keys lodged with the United States Secret Service on June 30, 2003. Def.'s Ex. A [16-

---

[1] By consent of the parties, this case was referred to the undersigned Magistrate Judge for all purposes and trial pursuant to 28 U.S.C. § 636(c). *See* "Consent to Proceed Before a United States Magistrate Judge for All Purposes" [13].

4]. Plaintiff requested that the Secret Service provide "any and all records in your file regarding me." *Id*. On July 9, 2003, the Secret Service Freedom of Information / Privacy Act (FOI/PA) officer acknowledged receipt of Plaintiff's request. Def.'s Ex. B [16-5]. On August 26, 2003, after receiving a notarized statement from Plaintiff attesting to his identity and a commitment from Plaintiff to pay up to $25 in fees, the Secret Service informed Plaintiff that it would begin a search of its records for the files sought. Def.'s Ex. D [16-7].

Acting on Plaintiff's request, the agency searched the Secret Service Master Criminal Index (MCI), an online record-keeping system used by the Secret Service, using the Plaintiff's name, date of birth, and social security number. Ulmer Decl. ¶¶ 17-18. The MCI search produced three files indexed to Plaintiff's name in three Secret Service Field Offices (Jacksonville, Baltimore, and Los Angeles). *Id*. ¶ 20. The Field Offices forwarded these files to the FOI/PA Office, which determined that the files were responsive to Plaintiff's request. *Id*. The FOI/PA Office also requested that four other agencies that might maintain files regarding Plaintiff - the Federal Bureau of Prisons, the D.C. Court Services and Offender Supervision Agency, the Federal Bureau of Investigation, and the Executive Office for United States Attorneys - search their records. Def.'s Ex. G-J [16-10] [16-11] [16-12] [16-13]. These searches did not yield any responsive materials. Ulmer Decl. ¶ 21.

By letter dated July 18, 2007, the Secret Service provided Plaintiff with documents in response to his FOIA request and indicated that 279 pages were withheld in their entirety under the Freedom of Information Act (FOIA) and Privacy Act (PA). Def.'s Ex. F [16-9]. On July 24, 2007, the Secret Service released an additional twenty-three pages of a twenty-five page document. Def.'s Ex. K [16-14]. By letter dated August 13, 2007, the Secret Service provided

Plaintiff with additional documents and indicated that a total of 226 pages, all of which related to a criminal investigation of a third party, were being withheld under FOIA and the PA.  Def.'s Ex. L [16-15].

On March 13, 2007, Plaintiff filed an "Emergency Petition for Mandamus" in which he alleged that Defendant failed to comply with its obligations under FOIA.  Pl.'s Pet. at 2 [1].  While Plaintiff did not specify which aspects of Defendant's compliance were deficient, he cited to case law describing an agency's duty to conduct a reasonable search and an agency's burden of justifying materials that it withheld under FOIA Exemptions.  *Id*. at 3.  Plaintiff asked the Court to, *inter alia*, issue an order directing Defendant to disclose the requested information and provide a *Vaughn* index.  *Id*. at 4.  On April 23, 2007, United States District Judge James Robertson issued an Order denying Plaintiff's petition for a writ of mandamus but allowing the action to proceed against Defendant as a civil action pursuant to FOIA [6].

**II.     Standard of Review**

Under Federal Rule of Civil Procedure 56, a court will grant summary judgment "if the pleadings, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party opposing the motion then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When determining whether there is a genuine issue of material fact for trial, the Court must draw all reasonable inferences in favor of the non-moving

party. *Id*. at 255.

Summary judgment is the procedural vehicle by which Freedom of Information Act (FOIA) cases are typically resolved. *Harrison v. Executive Office for U.S. Attorneys*, 377 F.Supp.2d 141, 145 (D.D.C. 2005). A defendant in a FOIA action is entitled to summary judgment if the defendant proves that it has fully discharged its obligations under the Act. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). Specifically, the agency must demonstrate that (1) it conducted an adequate and good faith search for the requested documents, *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); (2) any documents that it withheld fall within one of the FOIA exemptions, *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); and (3) it disclosed all "reasonably segregable," nonexempt material, *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). In determining whether the defendant agency has met this burden, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *Id*.

**III.   Discussion**

A.   Adequacy of Search

To prevail on a motion for summary judgment, a defendant agency "must show that is has made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested. *Oglesby*, 920 F.2d at 68. Because an agency's search must by reasonable, but not exhaustive, the agency need only search those record systems that are likely to produce responsive documents. *Id*. The agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed,

4

and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id*. The purpose of this affidavit is "to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Id*.

Defendant has demonstrated that the Secret Service conducted an adequate search in response to Plaintiff's FOIA request. The Ulmer Declaration describes how the Secret Service used Plaintiff's name, social security number and date of birth to search for responsive documents in the Master Central Index. Ulmer Decl. ¶ 17. Because all field offices of the Secret Service use the MCI to record information on individuals who are subjects in investigative or administrative files, the MCI is a record system that was likely to produce responsive documents. *Id*. ¶ 19. The Secret Service also sent requests to other agencies, asking them to search their files for responsive records. *Id*. ¶ 21. Plaintiff does not challenge the adequacy of the agency's search. *See* Pl.'s Opp'n. Based on the affidavit provided by Defendant, the Court finds that Defendant has met its burden of proving that it has conducted a good faith search for the responsive records and that summary judgment should be granted on this issue.

B.   Applicability of Claimed Exemptions to Withheld Material

Consistent with the purpose behind FOIA, which is to provide public access to government documents, the burden is on the agency to justify withholding documents sought by a requester. *Beck*, 997 F.2d at 1490-91. Although FOIA provides for broad disclosure of documents, Congress has exempted nine categories of documents from the Act. *Id*. *See also* 5 U.S.C. § 552(b). The agency bears the burden of demonstrating that the documents it has

withheld fall within one of these exemptions. 5 U.S.C § 552(a)(4)(B); *Natural Res. Def. Council, Inc v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000) (" . . . FOIA itself places the burden on the agency to sustain the lawfulness of specific withholdings in litigation."). While a *Vaughn* index is a common device used by agencies to meet this burden of proof, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a court may also award summary judgment on the basis of information provided by the agency in affidavits. Such affidavits must "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [may not be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

In this case, the Secret Service has withheld responsive documents under FOIA Exemptions 2, 7(C), and 7(E). For the reasons discussed below, the Court finds that Defendant has met its burden of proving that the withheld documents fall within one or more of these Exemptions and that Plaintiff has failed to demonstrate the existence of a genuine issue for trial. Therefore summary judgment on the issue of the applicability of the claimed Exemptions should be granted in favor of Defendant.

1.   *Exemption 2*

Exemption 2 permits an agency to withhold documents that are "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). As an initial matter, an agency may only withhold information under Exemption 2 if the information is "used for predominantly internal purposes." *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 670

F.2d 10501, 1073 (D.C. Cir. 1981). If this threshold test is met, an agency may withhold the material "by proving that either [1] disclosure may risk circumvention of agency regulation, or [2] the material relates to trivial administrative matters of no genuine public interest." *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (citations omitted). The former category is often referred to as "high 2" information and the latter category is often referred to as "low 2" information. *Id*.

    The Secret Service withheld the following responsive material under Exception 2: "special agent identification numbers; computer access/identification numbers used by Secret Service, internal Secret Service account numbers, internal Secret Service email addresses, and the name of a type of investigation conducted by the Secret Service which is not generally known to the public." Ulmer Decl. ¶ 25. A special agent's identification number is associated with the agent's name and may be used to identify the agent. *Id*. ¶ 27. Defendant argues that knowledge of this identification number could allow someone to gain information about or impersonate that agent. *Id*. Defendant asserts that the computer access/identification numbers, internal account numbers and internal email addresses have been withheld because they have no information value and "could assist someone in hacking into a federal computer data base." *Id*. ¶ 28. Finally, Defendant argues that it withheld the name of a type of investigation being conducted by the Secret Service because release of such information could allow a "potential offender to undermine the investigative mission of the Secret Service by modifying his or her actions so as to avoid detection and circumnavigate the investigative efforts of the Secret Service." *Id*. ¶ 29. Plaintiff does not specifically address Defendant's Exemption 2 justification, merely stating that "[t]he information requested by plaintiff is NOT exempt from disclosure. . . ." Pl.'s Opp'n ¶ 5.

The Court finds that disclosure of the information withheld by the Secret Service pursuant to Exemption 2 would risk circumvention of agency regulation and is of no genuine public interest. In *Changzhou Laosan Group v. U.S. Customs and Border Protection Bd.*, No. 1:04-cv-1919, 2005 WL 913268 (D.D.C. Apr. 20, 2005), the Court applied precedents from this Circuit and held that disclosure of investigation case names or information about law enforcement operation handling was protected under the "high 2" exemption and that computer codes, internal file numbers and internal operation information was protected under the "low 2" exemption. Courts have also upheld a law enforcement agency's decision to withhold information about undercover operations. *See, e.g.*, *Barkett v. U.S. Dep't of Justice*, No. 1:86-cv-2029, 1989 WL 930993 (D.D.C. July 18, 1989) (holding that disclosure of internal DEA codes "could place the lives of undercover DEA agents in extreme peril"). Based on the justifications for non-disclosure provided by Defendant and the nature of the material withheld, the Court finds that the agency has met its burden of proving that the Secret Service properly invoked Exemption 2 to withhold the categories of information discussed above.

2.     *Exemption 7(C)*

Exemption 7(C) permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personnel privacy." 5 U.S.C. § 552(b)(7)(C). In evaluating whether an agency has properly invoked this Exemption, "the court must balance the privacy interests involved against the public interest in disclosure." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C. Cir. 1991).

The Supreme Court has held that the public interest that the court must consider is limited to "FOIA's central purpose of exposing to public scrutiny official information that sheds light on an agency's performance of its statutory duties . . . ." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

Defendant cites Exemption 7(C) to justify the withholding of "the names, signatures and telephone numbers of law enforcement personnel" on the ground that disclosure of this information could "subject public servants to harassment and annoyance either in the conduct of their official duties or their private lives." Ulmer Decl. ¶ 32. The Court agrees with Defendant that the personal information of law enforcement personnel is protected under Exemption 7(C). As the Fourth Circuit has stated:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978). *See also Becker v. I.R.S.*, 34 F.3d 398, 405 n.23 (7th Cir. 1994) (upholding District Court's finding that I.R.S. properly withheld documents containing I.R.S. agents' names, initials and/or phone numbers). Secret Service agents, like other federal law enforcement officials, have a "substantial privacy interest" in their personal information. *Manna v. Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir. 1995) (citations omitted). The Plaintiff has not offered, and the Court cannot find, any public interest in disclosure that outweighs this substantial privacy interest. Therefore the Court finds that Defendant properly withheld the personal information of Secret Service agents under Exemption 7(C).

Defendant also cites Exemption 7(C) to justify the withholding of "names and other identifying information concerning third parties . . . who provided information to the Secret Service in connection with a criminal investigation, and names and identifying information concerning third parties who were charged with, or suspected of, criminal activity."  Ulmer Decl. ¶ 33.  The Court agrees with Defendant that the personal information of witnesses, suspects and defendants in criminal investigations is protected under Exemption 7(C).  As this Circuit has recognized, the privacy interests implicated by these types of information are substantial because disclosure of the identities of targets of or other persons involved in a criminal investigation can lead to embarrassment, harassment, and harm to their reputation.  *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 587 (D.C. Cir. 1987).  *See also Mack v. Dep't Navy*, 259 F.Supp.2d 99, 109 (D.D.C. 2003) (holding "that the agents, victims, witnesses, subjects of investigation, and third parties identified" in the withheld material had a privacy interest in that material).  Plaintiff has again failed to identify a public interest that outweighs the substantial private interest at stake.  Moreover, this Circuit has held that the public interest in disclosure of the personal information of third parties in law enforcement records is "insubstantial."  *Id*.  Therefore the Court concludes that with respect to the names of third parties in Secret Service records, the privacy interests at stake outweigh the public interest in disclosure of this information and withholding was proper under Exemption 7(C).

3.     *Exemption 7(E)*

Exemption 7(E) permits an agency to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The first clause of Exemption 7(E) provides "categorical protection for techniques and procedures used in law enforcement investigations or prosecutions." *Judicial Watch, Inc. v. Dep't of Justice*, 337 F.Supp.2d 146, 181 (D.D.C. 2004) (citations omitted). Because the Exemption grants categorical protection to these materials, it "requir[es] no demonstration of harm or balancing of interests." *Peter S. Herrick's Customs & Int'l Trade Newsletter v. Customs and Border Prot.*, No. 1:04-cv-00377, 2006 WL 1826185, at *7 (D.D.C. June 30, 2006). Even techniques or procedures that are commonly known to the public "may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Judicial Watch*, 337 F. Supp.2d at 181.

Defendant invoked Exemption 7(E) to justify withholding "the type of investigation routinely used by the Secret Service when investigating criminal counterfeiting activity." Ulmer Decl. ¶ 37. Defendant argues that disclosure of this information "could benefit those attempting to violate the law and avoid detection by the Secret Service," "nullify the future effectiveness of this investigative method," and "impede the Secret Service's efforts to investigate criminal activity in the future." *Id*. ¶ 37. Again, Plaintiff does not specifically challenge the application of this Exemption to the withheld material. The Court finds that the Secret Service properly relied on Exemption 7(E) to withhold information relating to methods used to investigate

criminal counterfeiting activity because the release of such information could compromise future investigations.

C.     Disclosure of Reasonably Segregable, Nonexempt Material

In discharging its duties under FOIA, an agency must disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b). FOIA's focus is on disclosure of "information, not documents;" therefore "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent.*, 556 F.2d 260. However, non-exempt portions of documents need not be disclosed if "they are inextricably intertwined with exempt portions." *Id*. The burden is on the agency to adequately demonstrate that all reasonably segregable, nonexempt material was disclosed. *Church of Scientology v. IRS*, 816 F. Supp. 1138, 1162 (W.D. Tex. 1993).

Defendant argues that the Secret Service met its segregability obligation and that "all information withheld is exempt from disclosure pursuant to the FOIA exemption or is not reasonably segregable because it is so intertwined that protected material segregating is not possible or its release would have revealed the underlying protected material." Ulmer Decl. ¶ 38. Defendant further submits that "the agency's release of documents with appropriate redactions demonstrates that the Secret Service reviewed all records carefully and determined what portions could be released and what portions needed to be withheld." Def.'s Mot. at 25. Having reviewed the statements in the Ulmer Declaration, the Court is satisfied that the Secret Service has produced all reasonably segregable, nonexempt documents that are responsive to Plaintiff's FOIA request. Therefore the Court finds that Defendant is entitled to summary judgment on the

issue of segregability.


### IV.     Conclusion

For the foregoing reasons, the Court finds that Defendant has met its burden on the Freedom of Information Act and is therefore entitled to summary judgment. The Court will issue an Order consistent with this Memorandum Opinion.


Dated: September  26 , 2007                    ___/s/_____
                                               ALAN KAY
                                               UNITED STATES MAGISTRATE JUDGE