UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DARREN LAMONT KEYS**,<br><br>    Plaintiff,<br><br>  v.<br><br>**DEPARTMENT OF HOMELAND SECURITY**,<br><br>    Defendant. | Civil Action No. 07-465 (AK) |

**STATEMENT OF REASONS**

This matter is before the Court on a limited remand from the United States Court of Appeals for the District of Columbia Circuit. In compliance with the Court of Appeals' remand order, the Court issues the following Statement of Reasons.

**I.    Background**

This case concerns a Freedom of Information Act ("FOIA") request that *pro se* Plaintiff Darren Lamont Keys submitted to the United States Secret Service ("Secret Service" or "the agency") on June 20, 2003 in which Plaintiff sought all records in the agency's files concerning him. (Mem. Op. [20], at 1-2.) Acting on Plaintiff's request, the agency searched its records and located three criminal investigating files relating to Plaintiff. (1st Ulmer Decl. [16-3] ¶ 8.) The agency ultimately released some documents to Plaintiff while withholding approximately 500 pages under various FOIA Exemptions. (*Id*. ¶¶ 10, 15-16.)

While conducting its search for responsive records, the Secret Service also located

documents originating with other agencies - the United States Marshals Service ("Marshals Service")[1], the Federal Bureau of Prisons ("BOP"), the Court Services and Offender Supervision Agency ("CSOSA"), the Federal Bureau of Investigation ("FBI"), the Executive Office of United States Attorney ("EOUSA"), and the United States Probation and Pretrial Services Agency ("USPPSA"). (*Id*. ¶¶ 11-14; 2d Ulmer Decl. [37-2] ¶¶ 5-9.) By letters dated July 18, 2007, the Secret Service referred these materials to the other agencies pursuant to the applicable Department of Homeland Security Regulations, 6 C.F.R. §§ 5.4(c) and (d), for direct response to Plaintiff. (Ulmer Decl. ¶¶ 11-14; 2d Ulmer Decl. ¶¶ 5-9.)

On September 26, 2007, this Court granted summary judgment in favor of Defendant. (Order [21].) Specifically, the Court found that: (1) Defendant met its burden of demonstrating that it conducted an adequate search for responsive records; (2) Defendant established that it properly withheld responsive documents under FOIA Exemptions 2, 7(C), and 7(E); and (3) Defendant met its burden of proving that it has disclosed all reasonably segregable, nonexempt material. (Mem. Op. 5, 6, 12.) The Court, in reaching these conclusions, did not address whether Defendant's policy of referring documents to other agencies was proper because neither of the parties raised that issue in their papers.

Plaintiff appealed this Court's decision on October 31, 2007. (Notice of Appeal [23].) On April 28, 2008, the United States Court of Appeals for the District of Columbia Circuit remanded to this Court "for a statement of reasons for the grant of summary judgment with regard to the documents referred by the appellee to other agencies for processing under the

---

[1] The referral to the Marshals Service was not discussed in the original Ulmer Declaration, which Defendant submitted in support of its Motion for Summary Judgment. However, it is discussed in the Second Ulmer Declaration, which Defendant submitted in light of the Court of Appeals' remand order.

Freedom of Information Act." (Order of 4/28/08.) Because the record contained insufficient evidence to allow this Court to evaluate the propriety of the referrals, the Court ordered Defendant to submit additional materials regarding the referral procedure employed in this case. (Order [29], at 2.) In response, Defendant provided the Court with information about the manner in which each of the four other agencies processed Plaintiff's FOIA request. (*See generally* Def.'s Br. [37].)

## II.     Referral of Plaintiff's FOIA Request to Other Agencies

### A.     Department of Homeland Security Regulations

If, while processing a FOIA request, the Secret Service discovers that responsive records originated with another agency or contain information that originated with another agency, the Secret Service will refer the records to that agency for a determination of whether the records should be released to the requester. The Department of Homeland Security regulation that governs the referral process provides, in relevant part:

> (c) Consultations and referrals. When a component receives a request for a record in its possession, it shall determine whether another component, or another agency of the Federal Government, is better able to determine whether the record is exempt from disclosure under the FOIA and, if so, whether it should be disclosed as a matter of administrative discretion. If the receiving component determines that it is best able to process the record in response to the request, then it shall do so. If the receiving component determines that it is not best able to process the record, then it shall either:
>
> > (1) Respond to the request regarding that record, after consulting with the component or agency best able to determine whether to disclose it and with any other component or agency that has a substantial interest in it; or
> >
> > (2) Refer the responsibility for responding to the request regarding that record to the component best able to determine whether to disclose it, or to

> another agency that originated the record (but only if that agency is subject to the FOIA). Ordinarily, the component or agency that originated a record will be presumed to be best able to determine whether to disclose it.
>
> (d) Law enforcement information. Whenever a request is made for a record containing information that relates to an investigation of a possible violation of law and was originated by another component or agency, the receiving component shall either refer the responsibility for responding to the request regarding that information to that other component or agency or consult with that other component or agency.

6 C.F.R. § 5.4(c)-(d). When confronted with material that originated with another agency, the Secret Service generally has three options: (1) process the material itself; (2) process the material after consulting with the originating agency; or (2) refer the material to the originating agency for processing. 6 C.F.R. § 5.4(c). If, however, the material includes law enforcement information, the Secret Service must either refer it to the originating agency or consult with that agency about how to resolve the FOIA request. 6 C F.R. § 5.4(d).

      B.      <u>Referral Procedures Employed in Plaintiff's Case</u>

In the instant case, "the Secret Service determined that the information and documents at issue would be best handled by the originating agencies. Consequently, documents responsive to plaintiff's access request that contained information originating with other federal agencies were referred to the entity the Secret Service believed had originated the information." (2d Ulmer Decl. [37-2] ¶ 4.) The referral letters directed the originating agencies to respond directly to Plaintiff and to provide the Secret Service with a copy of its response. (*See, e.g.*, Ex. A to 2d Ulmer Decl.) The Secret Service notified Plaintiff that it had referred these documents and that the originating agencies would respond directly to him. (Ex. F to 1st Ulmer Decl. [16-9].)

       1.    *United States Marshals Service*

By letter dated July 18, 2007, the Secret Service referred responsive material originating with the Marshals Service to that agency for processing. (2d Ulmer Decl. ¶ 5; Ex. A to 2d Ulmer Decl.) The documents referred to the Marshals Service consisted of a one-page Secret Service report and a five-page psychological evaluation addressed to United States Magistrate Judge Howard Snyder. (Bordley Decl. [37-3] ¶ 2.) On July 23, 2007, the Marshal's Service released the six pages of documents after redacting from the psychological evaluation "the name of a federal law enforcement officer, the names of doctors, doctor's employees, and third-party individuals associated with the plaintiff" pursuant to Exemption 7(C). (*Id.* ¶ 3.) Also on July 23, 2007, the Marshals Service notified the Secret Service that they had responded to Plaintiff. (2d Ulmer Decl. ¶ 5; Ex. B to 2d Ulmer Decl.)

       2.    *Executive Office of United States Attorney*

By letter dated July 18, 2007, the Secret Service referred responsive material originating with EOUSA to that agency for processing. (2d Ulmer Decl. ¶ 6.; Ex. F to Boseker Decl. [37-4].) On July 31, 2007, EOUSA released two pages in part and withheld four pages in their entirety pursuant to FOIA Exemptions 3, 5 and 7(C), Federal Rule of Criminal Procedure 6(e), and Privacy Act Exemption (j)(2). (Boseker Decl. ¶ 14.) EOUSA also notified Plaintiff "that the remainder of the 120 reviewed pages were public records, which could be obtained, if desired, by making a separate written request, and would be subject to possible copying fees." (*Id.*; Ex. G to Boseker Decl.) Also on July 31, 2007, EOUSA provided the Secret Service with a copy of their response to Plaintiff. (2d Ulmer Decl. ¶ 6; Ex. C to 2d Ulmer Decl.)

   3.  *Federal Bureau of Investigation*

  By letter dated July 18, 2007, the Secret Service referred responsive material originating with the FBI to that agency for processing. (2d Ulmer Decl. ¶ 7; Ex. A to Hardy Decl. [37-5].) On August 10, 2007, the FBI released seven pages of responsive material to Plaintiff. (Hardy Decl. ¶ 5.) One of the pages contained a single redaction pursuant to FOIA Exemptions 6 and 7(C) and Privacy Act Exemption (j)(2). (*Id*.; Ex. B to Hardy Decl.) The FBI ultimately determined that the redacted information was an alias used by Plaintiff, and accordingly the FBI released the remaining information to Plaintiff on June 10, 2008. (*Id.* ¶ 6; Ex. C to Hardy Decl.)

   4.  *Court Services and Offender Supervision Agency*

  By letter dated July 18, 2007, the Secret Service referred sixteen pages of responsive material that it believed to have originated with CSOSA to that agency for processing. (2d Ulmer Decl. ¶ 9.) The materials consisted of: (1) a four-page memorandum dated September 4, 2001; (2) an eleven-page Presentence Report ("PSR"), and (3) a one-page facismile transmittal sheet. (*Id*.) CSOSA returned this material to the Secret Service on June 4, 2008 and informed the Secret Service that the materials did not originate with CSOSA. (*Id*.)

   5.  *Federal Bureau of Prisons*

  By letter dated July 18, 2007, the Secret Service referred responsive material originating with BOP to that agency for processing. (2d Ulmer Decl. ¶ 8.) The materials consisted of: (1) an August 12, 2002 letter from Warden Art F. Beeler to District Judge Ralph W. Nimmons; and (2) a July 31, 2002 Forensic Evaluation of Plaintiff. (Baumgartel Decl. [37-6] ¶ 3.) BOP released

these materials in their entirety on June 24, 2008.  (*Id*. at 5.)

On June 9, 2008, the Secret Service also referred to BOP the documents that the Secret Service previously referred to CSOSA.  (2d Ulmer Decl. ¶ 9; Baumgartel Decl. ¶ 4.)  On June 23, 2008, BOP notified the Secret Service that it could not make a release determination because the documents did not originate with BOP.  (2d Ulmer Decl. ¶ 9; Baumgartel Decl. ¶ 4.)  BOP also notified Plaintiff of the agency "policy which expressly and categorically prohibits inmates from possessing or receiving copies of their PSR, while incarcerated."  (Letter from Hunt to Keys, Baumgartel Decl. at 5.)  BOP also notified Plaintiff of his right to review the copy of his PSR that is maintained in his Central File by contacting his Unit Team in the facility at which he was incarcerated.  (*Id*.)

6. *United States Probation and Pretrial Services Agency*

By e-mail dated June 23, 2008, the Secret Service referred to USPPSA the sixteen pages of material that had previously been referred to both CSOSA and BOP.  (2d Ulmer Decl. ¶ 9.)  On June 25, 2008, USPPSA responded directly to Plaintiff and indicated that it would not provide him with the materials because "[t]he courts are excluded from the Freedom of Information and Privacy Acts" and because "Bureau of Prisons' policy prohibits inmates from possessing or receiving copies of their Presentence Report while in custody."  (Ex. G to 2d Ulmer Decl.)

      C.    <u>Secret Service's Processing of Remaining Documents</u>

Because the PSR and the accompanying memorandum and facsimile transmittal sheet did not originate with CSOSA or BOP, and because USPPSA indicated that it was excluded from FOIA, "the Secret Service determined that it would need to directly respond to plaintiff's FOIA request as it concerned these documents." (2d Ulmer Decl. ¶ 10.) On July 3, 2008, after consulting with USPPSA, the Secret Service released the memorandum and facsimile transmittal sheet, redacting only the name of a Secret Service employee on the facsimile transmittal sheet pursuant to Exemption 7(C). (*Id.*; Ex. H to 2d Ulmer Decl.) The Secret Service refused to release the PSR because of BOP's policy that prohibits inmates from receiving copies of their PSR. (2d Ulmer Decl. ¶ 10; Ex. H to 2d Ulmer Decl.)

**III.**    <u>Discussion</u>

Summary judgment is the procedural vehicle by which FOIA cases are typically resolved. *Harrison v. Executive Office for U.S. Attorneys*, 377 F.Supp.2d 141, 145 (D.D.C. 2005). A defendant in a FOIA action is entitled to summary judgment if the defendant proves that it has fully discharged its obligations under the Act. *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). Specifically, the agency must demonstrate that (1) it conducted an adequate and good faith search for the requested documents, *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); (2) any documents that it withheld fall within one of the FOIA exemptions, *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993); and (3) it disclosed all "reasonably segregable," nonexempt material, *Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). If an agency has improperly withheld records that are responsive

to a FOIA request, a federal court may compel the agency to disclose them to the requester. 5 U.S.C. § 552(a)(4)(B).

If an agency receives a FOIA request for documents within its possession, the agency is responsible for processing the request and "cannot simply refuse to act on the ground that the documents originated elsewhere." *McGehee v. C.I.A.*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). However, an agency may adopt procedures by which documents in the agency's possession, but which did not originate with the agency, may be referred to the originating agency for processing. *See id.* The legality of such referral procedures is "best determined on the basis of their consequences." *Id*. A referral system constitutes a "withholding" under FOIA "if its net effect is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Id*. A withholding of this sort "will be deemed 'improper' unless the agency can offer a reasonable explanation for its procedure." *Id*.

Although there is no "bright line" test for evaluating referral procedures, the D.C. Circuit in *McGehee* outlined a sample procedure to assist courts in doing so. *Id*. at 1111. First, a court should consider whether the originating agency demonstrated an intent to control the records at issue. *Id*. The "intent to control" test is satisfied if (1) the materials bear "explicit indications" that the originating agency intended to "retain the authority to decide if and when materials are released to the public," or (2) "the circumstances surrounding the creation and transfer of the documents" indicate such an intent. *Id*. Second, taking into account the delays that may result from referral procedures, a court should examine whether the referral was "prompt and public." *Id*. For a referral to be considered prompt and public, the agency must "immediately (i) inform the requester of the situation, (ii) notify the originating agency, and (iii) if necessary, forward to

9

the latter copies of the relevant documents." *Id*. Additionally, the court should consider the burden that the referral procedure places on the requester, including whether he would be required to file a separate FOIA request to the originating agency. *See id*. ("To minimize the burden on the requester, this notification and referral would be accorded the status of a FOIA request; the person seeking information would thereby be relieved of the duty to submit a separate demand to the originating agency.").

      A.      <u>Legality of Secret Service's Referral Procedures</u>

Consistent with the Department of Homeland Security Regulations set forth at 6 C.F.R. § 5.4(c)-(d), the Secret Service referred "documents responsive to plaintiff's access request that contained information with other federal agencies . . . to the entity the Secret Service believed originated the information." (2d Ulmer Decl. ¶ 4.) Although it is unclear from the record whether these documents satisfied the "intent to control" test set forth in *McGehee*, the Court accepts Defendant's representations that the Secret Service believed that the information contained in these documents originated with other agencies. Furthermore, Plaintiff has not proffered any information to create a genuine issue of material fact regarding whether the intent to control test was satisfied. Accordingly the Court finds that the Secret Service's initial decision to refer these documents to the originating agencies was proper. The Court now turns to whether the referrals to these agencies constituted a withholding of documents under FOIA, and, if so, whether the withholding was improper.

1. *Marshals Service*

As set forth above, the Secret Service referred six pages of responsive material to the Marshals Service for a direct response to Plaintiff. (2d Ulmer Decl. ¶ 5; Bordley Decl. ¶ 2.) Five days after receiving the referral, the Marshals Service released all six pages to Plaintiff, redacting only "the name of a federal law enforcement officer, the names of doctors, doctor's employees, and third-party individuals associated with the plaintiff" pursuant to Exemption 7(C). (Bordley Decl. ¶ 3.) Because of the timely manner in which the Marshals Service responded to Plaintiff, the Court does not believe that this referral had the net effect of significantly impairing Plaintiff's ability to obtain the records or significantly increasing the amount of time he had to wait to receive them. *Cf. Perlata v. U.S. Attorney's Office*, 69 F.Supp.2d 21, 29 (D.D.C. 1999), *vacated on other grounds on reconsideration* (finding that a referral constituted a withholding when it resulted in a delay).

The Court further finds that the agency's decision to redact the names of third parties before releasing the documents to Plaintiff did not constitute an improper withholding. Exemption 7(C) permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personnel privacy." 5 U.S.C. § 552(b)(7)(C). In evaluating whether an agency has properly invoked this Exemption, "the court must balance the privacy interests involved against the public interest in disclosure." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C. Cir. 1991). The Supreme Court has held that the public interest that the court must consider is limited to "FOIA's central purpose of exposing to public scrutiny official information that sheds light on an

agency's performance of its statutory duties . . . ." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

The Court finds that the information that the Marshals Service withheld is protected under Exemption 7(C). As the Fourth Circuit has stated:

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives.

*Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978). *See also Becker v. I.R.S.*, 34 F.3d 398, 405 n.23 (7th Cir. 1994) (upholding District Court's finding that I.R.S. properly withheld documents containing I.R.S. agents' names, initials and/or phone numbers). Law enforcement personnel have a "substantial privacy interest" in their personal information. *Manna v. Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir. 1995) (citations omitted). The Plaintiff has not offered, and the Court cannot find, any public interest in disclosure that outweighs this substantial privacy interest. Therefore the Court finds that the Marshals Service properly redacted this information before releasing responsive material to Plaintiff.

      2.    *Executive Office of United States Attorney*

Approximately two weeks after receiving documents from the Secret Service, EOUSA responded to Plaintiff and released two pages in part and withheld four pages in their entirety pursuant to FOIA Exemptions 3, 5 and 7(C), Federal Rule of Criminal Procedure 6(e), and Privacy Act Exemption (j)(2). (2d Ulmer Decl. ¶ 6; Boseker Decl. ¶ 14.) EOUSA also notified Plaintiff "that the remainder of the 120 reviewed pages were public records, which could be

obtained, if desired, by making a separate written request, and would be subject to possible copying fees." (Boseker Decl. ¶ 14; Ex. G to Boseker Decl.)

Although EOUSA's response was prompt, the Secret Service, as the agency ultimately responsible for responding to Plaintiff's FOIA request, has failed to demonstrate that EOUSA's withholding of responsive material was proper.[2] First, neither agency sets forth the nature of the six pages of material that EOUSA withheld, either in whole or in part, pursuant to the FOIA and Privacy Act Exemptions and Rule 6(e), such that the Court cannot evaluate whether these exemptions were properly applied. *See* 5 U.S.C. § 552(a)(4)(B) (stating that "the burden is on the agency" to justify a withholding of documents under FOIA). Second, *McGehee* cautions that "a [referral] procedure that, in practice, imposed very large burdens on requesters (*e.g.*, by compelling them . . . to submit separate requests to a number of independent bodies) . . . would be highly difficult to justify." *McGehee*, 697 F.2d at 1110. The Secret Service has failed to explain why Plaintiff would be required to file a separate FOIA request if the 120 pages of material were responsive to his original request.

For these reasons, the Court finds that the withholding of documents by EOUSA was

---

[2] Rather than focusing on the propriety of the withholdings, Defendant relies on Plaintiff's failure to appeal EOUSA's decision to withhold these documents. (Def.'s Br. 19-20.) Specifically, Defendant argues that this Court does not have subject matter jurisdiction over Plaintiff's claim that these documents were improperly withheld because Plaintiff failed to exhaust administrative remedies before seeking judicial review. (*Id*. 20.) Defendant cites *Oglesby v. Department of the Army*, 920 F.2d 57 (D.C. Cir. 1990) for the proposition that a FOIA requester is deemed to have failed to exhaust administrative remedies when he fails to administratively appeal a denial of information. (*Id*.) However, *Oglesby* explicitly states that "failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing." 920 F.2d at 61. One purpose of the exhaustion requirement is to allow the agency "to correct or rethink initial misjudgments or errors" before the requester may challenge the agency's actions in court. *Id*. at 64. Because more than a year has elapsed since EOUSA notified Plaintiff that it was withholding these documents, the agency has had ample time correct its error. Therefore the Court finds that Plaintiff's failure to administratively appeal the agency's decision does not bar this Court from considering his claims.

improper under FOIA, that this Court erred in granting summary judgment in favor of Defendant on this issue, and that further judicial action is necessary to remedy this improper withholding. However, in light of the remand for a *statement of reasons*, it is unclear whether this Court presently has jurisdiction to order Defendant to produce these documents to Plaintiff.

        3.      *Federal Bureau of Investigation*

On July 18, 2007, the Secret Service referred seven pages of responsive material to the FBI for a direct response to Plaintiff. (2d Ulmer Decl. ¶ 7; Hardy Decl. ¶ 5.) On August 10, 2007, the FBI released these materials to Plaintiff, redacting only the name of what it believed to be a third party. (Hardy Decl. ¶ 5.) Almost one year later, the FBI determined that the redacted name was actually an alias used by Plaintiff and accordingly released this information to him. (*Id*. ¶ 6.)

The Court recognizes that a significant period of time elapsed between the referral to the FBI and the FBI's realization that it had inadvertently redacted material from responsive documents. However, the Court does not believe that the referral to the FBI resulted in an improper withholding under FOIA because, aside from this limited redaction, the FBI responded to Plaintiff in a prompt manner. Moreover, even if a court were to conclude that the net effect of this referral was to significantly increase the amount of time that Plaintiff had to wait to receive un-redacted copies of these documents, no further judicial action would be necessary because the FBI voluntary disclosed the un-redacted documents in June 2008.

    4.    *Court Services and Offender Supervision Agency*

CSOSA received sixteen pages of responsive material on July 18, 2007. (2d Ulmer Decl. ¶ 9.) However, it was not until June 4, 2008 that CSOSA returned this material to the Secret Service and indicated that the information contained therein did not originate with CSOSA. (*Id.*) At no time during that nearly one-year period did the Secret Service follow-up with CSOSA to determine whether it had responded directly to Plaintiff.

In *McGehee*, the D.C. Circuit stated that "when an agency receives a FOIA request for 'agency records' in its possession, it must take responsibility for processing the request," even if it determines that the documents originated elsewhere. *McGehee*, 976 F.2d 1095, 1110. Because the agency who received the FOIA request - in this case the Secret Service - is the agency ultimately responsible for responding to the request, the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere. Therefore the Court believes that the Secret Service had an obligation to ascertain whether CSOSA had responded to Plaintiff or whether the Secret Service needed to take additional action with respect to the documents that it referred to CSOSA.

It is clear to the Court that the Secret Service's referral of documents to CSOSA "constituted a 'withholding' because the 'net effect' of the referral was to significantly increased the amount of time plaintiff had to wait to" receive a response to his FOIA request. *Perlata*, 69 F.Supp.2d at 29. Moreover, the Court finds that this withholding was improper because the Secret Service ignored its responsibilities under FOIA. Because the referral constituted an improper withholding, the Court now believes that its initial grant of summary judgment in favor of Defendants on this issue was in error. However, as discussed elsewhere in this Statement of

Reasons, this issue is now moot because the Secret Service subsequently either released or properly withheld all of the documents that it had originally referred to CSOSA.

      5.    *Federal Bureau of Prisons*

The Secret Service referred two documents to BOP on July 18, 2007, but BOP did not release these documents to Plaintiff until June 24, 2008. (2d Ulmer Decl. ¶ 8; Baumgartel Decl. ¶ 3.) As in the case of the referral to CSOSA, this delay, combined with the Secret Service's failure to ascertain whether BOP had responded to Plaintiff, led to an improper withholding under the *McGehee* test. However, this issue is now moot because BOP ultimately released the documents in their entirety.

      6.    *June 2008 Referrals*

On June 9, 2008, the Secret Service referred to BOP the documents that the Secret Service originally referred to CSOSA. (2d Ulmer Decl. ¶ 9; Baumgartel Decl. ¶ 3.) On June 23, 2008, BOP notified the Secret Service that these documents did not originate with BOP and the Secret Service then referred them to USPPSA. (*Id.*) Two days later, USPPSA responded directly to Plaintiff and indicated, *inter alia*, that it was not subject to FOIA. (Ex G to 2d Ulmer Decl.)

Because the remand to the Court for a Statement of Reasons focuses on this Court's grant of summary judgment in September 2007, the Court does not express an opinion about whether these later referrals were proper. However, the Court notes that the documents referred to BOP and USPPSA in June 2008 - namely the September 3, 2001 memorandum, the PSR, and the facsimile transmittal sheet - were ultimately handled directly by the Secret Service.

B.   Secret Service's Redaction of Facsimile Transmittal Sheet

Pursuant to FOIA Exemption 7(C), the Secret Service redacted the name of a Secret Service employee before releasing to Plaintiff the facsimile transmission sheet that accompanies Plaintiff's PSR. (2d Ulmer Decl. ¶ 10.) As discussed above, Exemption 7(C) allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personnel privacy." 5 U.S.C. § 552(b)(7)(C). Plaintiff has not proffered a public interest in disclosure that outweighs the substantial privacy interest at stake. Therefore the Court finds that Defendant properly redacted the name of a Secret Service employee before releasing the facsimile transmittal sheet to Plaintiff and Defendant is entitled to summary judgment on this issue.

C.   Secret Service's Withholding of the Presentence Report

The Secret Service withheld Plaintiff's eleven-page PSR in light "of BOP's strict policy that inmates not receive copies of their PSR." (2d Ulmer Decl. ¶ 10.) BOP implemented this policy "[f]or safety and security reasons," including the following:

> Many PSRs [ ] contain information regarding the inmates' government assistance, financial resources, community affiliations, etc.
>
> The Bureau [of Prisons] has documented an emerging problem where inmates pressure other inmates for a copy of their PSRs [ ] to learn if they are informants, gang members, have financial resources, etc.
>
> Inmates who refuse to provide the documents are threatened, assaulted and/or seek protective custody. Likewise, inmates providing PSRs [ ] containing harmful information are faced with the same risks are harm.

(Program Statement 1351.05, at 15-16, Attach. 2 to Baumgartel Decl.)

In *Martinez v. Bureau of Prisons*, 444 F.3d 620, 625 (D.C. Cir. 2006), the Court of Appeals noted "that a court would be loath to second-guess" the policy judgments that are reflected in the BOP Program Statement.  The Court of Appeals affirmed the trial court's dismissal of Martinez's FOIA request, holding that "FOIA does not entitle him to have copies of his PSRs" so long as he "was afforded a meaningful opportunity to review his PSRs and to take notes on them." *Id*.  Because the record showed that Martinez had a meaningful opportunity to review his PSRs, he was not entitled to copies of those documents under FOIA.  *Id*.

The same BOP policy that prohibits an inmate from possessing a copy of his PSR also provides that an inmate "must be provided reasonable opportunities to access and review" this document, which must "be placed in the disclosable portion of the Inmate Central File." (Program Statement 1351.05, at 16, Attach. 2 to Baumgartel Decl.)  An inmate may review the disclosable portions of his Central File, including any PSRs contained therein, by submitting a request to unit staff.  (*Id*.)  Because this procedure provided Plaintiff with a meaningful opportunity to review his PSR, he is not entitled to receive a copy of it by filing a FOIA request. Therefore the Secret Service properly withheld Plaintiff's PSR and Defendant is entitled to summary judgment on this issue.

**IV.    Conclusion**

For the foregoing reasons, the Court concludes that it properly granted summary judgment in favor of Defendant with respect to documents that the Secret Service referred to the Marshals Service and FBI.  However, the Court concludes that it erroneously granted summary

judgment in favor of Defendant with respect to documents that the Secret Service referred to EOUSA and that further court action is necessary to correct this improper withholding of documents.  The Court further concludes that while it erroneously granted summary judgment in favor of Defendant with respect to documents that the Secret Service referred to CSOSA and BOP, the improper withholding was remedied by subsequent agency action, thereby rendering Plaintiff's claims with respect to these documents moot.  Finally, the Court finds that Defendant is entitled to summary judgment with respect to its redaction of the facsimile transmittal sheet and its withholding of the PSR.


Date: August 11, 2008                                    /s/                                                       
                                                                  ALAN KAY
                                                                  UNITED STATES MAGISTRATE JUDGE